**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JAMEL S. DUMAS, | : | NO. 1:09-cv-2235 |
| | : | |
| Plaintiff, | : | |
| | : | (Magistrate Judge Martin Carlson) |
| v. | : | |
| | : | |
| PATRICK McKINNEY, et al., | : | |
| | : | |
| Defendants. | : | ELECTRONICALLY FILED |

**DEFENDANT OFFICER PATRICK MCKINNEY'S
PRETRIAL MEMORANDUM
LISTING SIGNIFICANT LEGAL ISSUES,
ANTICIPATED WITNESSES AND PROPOSED EXHIBITS**

Counsel for the parties met and conferred on February 14, 2011.  In

anticipation of this matter commencing trial before the Honorable Martin C. Carlson

on March 21, 2011, Defendant Patrick McKinney[1] ("Officer McKinney"), by and

through his attorneys, respectfully files the following Pretrial Memorandum.

**A.      STATEMENT OF FEDERAL COURT JURISDICTION**

Plaintiff brings the present action pursuant to 42 U.S.C. § 1983 and alleges

that Officer McKinney violated the Fourth Amendment to the United States

---

[1]   By Stipulation filed on October 27, 2010 (Doc. 23) and approved by the Court on October 28, 2010 (Doc. 23), Plaintiff voluntarily dismissed all claims against the City of Lebanon, as well as the federal malicious prosecution and equal protection and state law assault and battery claims against Officer McKinney.  As such, Plaintiff's excessive force claim against Officer McKinney is the sole claim remaining for trial.

Constitution.  This Court has jurisdiction over Plaintiff's federal question claim

pursuant to 28 U.S.C. §§ 1331 and 1343.

## B.   SUMMARY OF FACTS AND CONTENTIONS AS TO LIABILITY

In the early morning hours of Sunday, April 20, 2008, Lebanon Police

Officer Patrick McKinney was dispatched to a domestic disturbance in the City of

Lebanon.  Upon arrival, Officer McKinney heard yelling and fighting sounds and

saw two males on the ground involved in a fight.  Both men had blood on them,

and it appeared that the younger male (later identified as Plaintiff Jamel Dumas)

was choking the older (Plaintiff's uncle, Robert Dumas) from the rear.  Officer

McKinney announced his presence and ordered Plaintiff to release Robert, and

then attempted to physically pull Plaintiff off Robert, but was unable to do so.

When he removed his hand from Plaintiff's arm, Officer McKinney saw that he

had blood on his hands.  Officer McKinney repeatedly ordered Plaintiff to release

Robert, but Plaintiff refused to comply.  Officer McKinney then advised Plaintiff

that he would use his Taser if Plaintiff did not release Robert, and Plaintiff told

him to "go ahead."  Concerned that Plaintiff was going to seriously injure the older

man – and knowing that he was the only officer on scene – Officer McKinney fired

his Taser in a 4-second burst – less than one full 5-second cycle.

As soon as Officer McKinney deployed the Taser, Plaintiff released his uncle and became compliant and began following Officer McKinney's commands. Backup officers arrived on scene as Officer McKinney was handcuffing Plaintiff.

Once Plaintiff was in custody, Officer McKinney noticed a strong odor of alcohol on both Plaintiff and Robert, and Robert had injuries to his face and hands. An ambulance was called to evaluate Robert's injuries, but it was determined that his injuries did not require hospitalization.  In addition, Robert, who was being combative and argumentative with the officers, refused medical treatment.  Both Plaintiff and Robert were transported back to Central Booking.  When Plaintiff realized that his uncle had also been arrested, he became extremely agitated and combative and used racial epithets with the officers.

As a result of the incident, Officer McKinney charged Plaintiff with simple assault (domestic violence), public drunkenness, and misdemeanor disorderly conduct.  After Plaintiff's uncle refused to testify against him, Plaintiff was permitted to plead guilty to summary disorderly conduct, and the remaining charges were dismissed.

## C.   <u>COMPREHENSIVE STATEMENT OF UNDISPUTED FACTS</u>

The following facts are undisputed by the parties:

- On April 20, 2008, Officer McKinney was employed as a Police Officer by the City of Lebanon.

- On that date, at approximately 1:11 a.m., Officer McKinney was dispatched to the 400 block of North5th Street in Lebanon.

- At that location, Plaintiff was outside with his uncle, Robert Dumas.

- Officer McKinney deployed his Taser, striking Plaintiff in the lower portion of his back and right side.

- Plaintiff was subjected to a 4-second charge from the Taser.

## D.   DAMAGES ALLEGED

See Plaintiff's Pretrial Memorandum.

## E.   LIST OF DEFENDANT'S EXPECTED WITNESSES

Officer McKinney submits the following list of witnesses whom he expects

to call to testify at trial in defense of Plaintiff's claims:

1.   Officer Patrick McKinney
     Lebanon Police Department
     400 South 8th Street
     Lebanon, PA  17042
     Factual witness/liability witness

2.   Sgt. Steven Bord
     Lebanon Police Department
     400 South 8th Street
     Lebanon, PA  17042
     Factual witness

3.   Ptlm. Ryan Margut
     Lebanon Police Department
     400 South 8th Street
     Lebanon, PA  17042
     Factual witness

4.      Ptlm. Ryan Mong
        Lebanon Police Department
        400 South 8th Street
        Lebanon, PA  17042
        Factual witness

5.      Ptlm. Eric Sims
        Lebanon Police Department
        400 South 8th Street
        Lebanon, PA  17042
        Factual witness

6.      Paula Logan
        420 North 5th Street
        Lebanon, PA
        Factual witness

7.      Alice M. Gingrich
        405 North 5th Street
        Lebanon, PA
        Factual witness

Officer McKinney reserves the right to supplement his witness list, to call as a witness any witness identified on Plaintiff's witness list, to call any witness to testify to the authenticity of any and all business, medical, or other records that may be presented and whose authenticity may be disputed, and reserves the right to call additional witnesses to rebut testimony and evidence presented in Plaintiff's case-in-chief.

## F.   **EXPERT WITNESSES**

Officer McKinney will not present any expert witnesses at trial.

**G.    SPECIAL COMMENTS ABOUT PLEADINGS AND DISCOVERY**

None

**H.    SUMMARY OF LEGAL ISSUES AND LEGAL AUTHORITIES**

**1.    Use of Force**

In order to prevail on his excessive force claim, Plaintiff must prove that the force Officer McKinney used was objectively unreasonable under the Fourth Amendment. *See Graham v. Connor*, 490 U.S. 386, 388, 394 (1989) (explaining that "*all* claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard."). The Supreme Court instructed that "the 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. In particular, the Court cautioned that "the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id.* at 396-97.

Accordingly, when evaluating the reasonableness of a police officer's use of force, a court should consider the specific circumstances of the case, such as "the severity of the crime at issue, whether the suspect poses an immediate threat to the

safety of the officers or others," and whether the suspect was actively resisting

arrest.  *Id.* at 396.  Also, "[i]f an officer reasonably, but mistakenly, believed that a

suspect was likely to fight back, for instance, the officer would be justified in using

more force than in fact was needed."  *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct.

2151, 2158 (2001).

Ultimately, under the standard of objective reasonableness, the question

becomes: were the Officer's actions objectively reasonable "in light of the facts

and circumstances confronting them, without regard to their underlying intent or

motivation"?  *Graham*, 490 U.S. at 397.  Factors to be considered include the need

for the application of force, the relationship between the need and the amount of

force that was used, the extent of the injury inflicted, the threat reasonably

perceived by the Officer, and whether the force was applied in a good faith effort

to maintain or restore discipline.  *Graham*, 490 U.S. at 396, 109 S. Ct. at 1872;

*Nadelin v. Martin*, No. 97-6385, 1998 U.S. App. LEXIS 29516 at *9 (4th Cir. Nov.

19, 1998); *Metzger v. Osbeck*, 841 F.2d 518, 520 (3d Cir. 1988).

Here, Officer McKinney's brief Taser deployment – less than one full 5-

second cycle – in an effort to stop Plaintiff from causing serious injury to his uncle

was objectively reasonable under the circumstances.  When Officer McKinney saw

Plaintiff choking his uncle from the rear, Officer McKinney announced his

presence and ordered Plaintiff to release Robert, and then attempted to physically

pull Plaintiff off Robert, but was unable to do so.  Plaintiff ignored Officer

McKinney's repeatedly commands to release Robert, and when Officer McKinney

advised Plaintiff that he would use his Taser if Plaintiff did not release Robert,

Plaintiff told him to "go ahead."

Officer McKinney will testify that that the Taser was the lowest level of

force available to him at the time, because he did not have time to use pressure

points, and he was concerned that pepper spray would have made breathing more

difficult for Robert, who was already in obvious respiratory distress.  Thus, Officer

McKinney made the split-second decision to use minimal force by deploying his

Taser in a 4-second charge in order to stop Plaintiff from seriously injuring his

uncle.  As soon as Officer McKinney deployed the Taser, Plaintiff released his

uncle and became compliant and began following Officer McKinney's commands.

Backup officers arrived on scene as Officer McKinney was handcuffing Plaintiff.

In sum, when applying the facts of the present case to the *Graham* factors

above, especially when considering that the application and analysis is to be done

from the perspective of a reasonable officer at the scene who doesn't have the

benefit of 20/20 hindsight, it is clear that the minimal force used was reasonable

and constitutionally permitted as a matter of law.

### 2.   **Qualified Immunity**

"[Q]ualified immunity protects government officials 'from liability for civil

damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, ____ S.Ct. ____, 2009 WL 128768, *6 (January 21, 2009) (quoting *Harlow v. Fitzgerald*, 475 U.S. 800, 818 (1982). Stated differently, qualified immunity gives police officers "ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991).

Prior to *Pearson*, qualified immunity claims involved a mandatory two-step analysis: first, a determination of whether a constitutional violation occurred, and second whether the right was clearly established at the time of the alleged misconduct. *Id.* In *Pearson*, the Supreme Court found the *Saucier* procedure too "rigid" in practice, and determined that the order of the two-step analysis "should not be regarded as mandatory in all cases." *Id.* at *9. Consequently, it held that "[t]he judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.*

As discussed above, no constitutional violation occurred, because Officer McKinney's 4-second Taser deployment was objectively reasonable. Even if the issue of reasonableness is too close to call in this case, Officer McKinney is

nevertheless entitled to qualified immunity, because the right was not clearly established in the specific context of this case.

Determination of whether a right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (quoting *Saucier v. Katz*, 533 U.S. 194, 198 (2001)).  The generalized test set out in *Graham* is not sufficient to satisfy this more particularized analysis.  *Id.* at 199.

A reasonable officer in Officer McKinney's position would not have known that it may be unlawful for him to deploy his Taser to stop Plaintiff from choking or otherwise injuring his uncle.  The Supreme Court did not provide a clearly established rule in *Graham* when force was permitted, and held that police officers may use "objectively reasonable" force.  *Graham*, 490 U.S. at 397.  Moreover, under *Saucier*, if an officer correctly perceives all of the relevant facts but has a mistaken understanding as to whether a particular amount of force is legal in those circumstances, qualified immunity can still attach.  *Saucier*, 533 U.S. at 206.

It is clear that a reasonable police officer facing the same circumstances would have acted the same as Officer McKinney.  Here, Officer McKinney was the sole officer on scene of a late night domestic dispute, and he was unable to physically pull Plaintiff off of his uncle.  Officer McKinney observed that Robert Dumas was in respiratory defense.  Plaintiff ignored the Officer's commands to

release his uncle and, when threatened with the Taser, Plaintiff's response was, "go ahead."  Plaintiff's actions, which caused Officer McKinney to believe that Plaintiff intended to cause serious bodily injury to Robert Dumas, gave Officer McKinney more than enough justification for assuming that deploying his Taser for a 4-second charge would be "within the bounds of appropriate police responses."  *Saucier*, 533 U.S. at 208.

Accordingly, under the doctrine of qualified immunity, the undisputed facts establish that Officer McKinney is entitled to qualified immunity as to Plaintiff's excessive force claim.

## I.  STIPULATIONS DESIRED

To the extent relevant, Officer McKinney will stipulate that the documents exchanged in discovery are true, authentic, and correct copies of the original documents, except where noted as redacted.

## J.  ESTIMATED NUMBER OF TRIAL DAYS

Officer McKinney estimates that trial will last approximately two to three days.

## K.  OTHER MATERS PERTINENT TO THE CASE

None.

## L.  EXPECTED EXHIBITS

In addition to any exhibits listed by Plaintiff, Officer McKinney submits his

list of proposed exhibits as "Exhibit A." The exhibits will be individually marked and copies will be provided to Plaintiff's counsel and this Honorable Court prior to the scheduled trial.

Officer McKinney reserves the right to use any exhibits listed in Plaintiff's Pretrial Memorandum and to supplement the present list to rebut testimony or evidence presented in Plaintiff's case-in-chief.

**M.      PROPOSED SPECIAL VERDICT QUESTIONS**

Officer McKinney's Proposed Special Verdict Questions are attached as "Exhibit B."

**N.      STATEMENT UNDER LOCAL RULE 16.2**

The persons with settlement authority for Officer McKinney have been notified of the requirements of and possible sanctions under Local Rule 16.2.

Respectfully submitted,


Dated: <u>February 28, 2011</u>               /s/ David J. MacMain
                                         David J. MacMain (I.D. No. 59320)
                                         Janelle E. Fulton (I.D. No. 80027)
                                         Lamb McErlane, PC
                                         24 East Market Street – Box 565
                                         West Chester, PA  19381-0565
                                         (610) 701-3263
                                         dmacmain@lambmcerlane.com
                                         *Attorneys for Defendant*
                                         *Officer Patrick McKinney*

# Exhibit A

## EXHIBIT LIST

CASE CAPTION:  JAMEL DUMAS v. PATRICK MCKINNEY, et al.          CASE NUMBER:  1:09-cv-2235
                MIDDLE DISTRICT OF PENNSYLVANIA          JUDGE:  Martin C. Carlson

| π | Δ | Description of Item | Identified | Evidence | Ruling | Witness |
|---|---|---|---|---|---|---|
|  | D-1 | Audio recording of 911 call from the incident |  |  |  |  |
|  | D-2 | Lebanon Police Department Incident Investigation Report for Incident No. 20080420M0001 (JD LPD 00001- 00011) |  |  |  |  |
|  | D-3 | Lebanon Police Department Incident Investigation Report for Incident No. 20080420M0001-A (JD LPD 00012-00014) |  |  |  |  |
|  | D-4 | Color photograph of Jamel Dumas from Incident Nos. 20080420M0001 and 20080420M0001-A (JD LPD 00015) |  |  |  |  |
|  | D-5 | Color photographs of Robert Dumas from Incident Nos. 20080420M0001 and 20080420M0001-A (JD LPD 00016-00017) |  |  |  |  |
|  | D-6 | Lebanon County Central Booking Information for District Justice Video Arraignments and Information Sheet (JD LPD 00053-00054) |  |  |  |  |
|  | D-7 | Commitment Form in the matter of *Commonwealth v. Jamel Dumas* (JD LPD 00055) |  |  |  |  |
|  | D-8 | Lebanon City Bureau of Police Response to Resistance Report and related documents (JD LPD 00093-00105) |  |  |  |  |

**EXHIBIT LIST**

CASE CAPTION:  <u>JAMEL DUMAS v. PATRICK MCKINNEY, et al.</u>          CASE NUMBER: <u>1:09-cv-2235</u>

<u>MIDDLE DISTRICT OF PENNSYLVANIA</u>          JUDGE:     <u>Marin C. Carlson</u>

| | | | | | | |
|---|---|---|---|---|---|---|
| | D-9 | Use of Force/Taser Training (JD LPD 00106-00108) | | | | |
| | D-10 | Lebanon City Police Department General Order No. 136 (Taser X26) (JD LPD 00109-00112) | | | | |
| | D-11 | Taser | | | | |
| | D-12 | Plaintiff's records from Lebanon County Prison (DUMAS LCCF 0001-0091) | | | | |

2413669v3

# Exhibit B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMEL S. DUMAS, | : | NO. 1:09-cv-2235 |
| | : | |
| Plaintiff, | : | |
| | : | (Magistrate Judge Martin Carlson) |
| v. | : | |
| | : | |
| PATRICK McKINNEY, et al., | : | |
| | : | |
| Defendants. | : | ELECTRONICALLY FILED |

## DEFENDANT'S PROPOSED VERDICT FORM

We, the jury, unanimously find the following by a preponderance of the evidence:

QUESTION 1:

Did the defendant, Patrolman Patrick McKinney, use excessive force against Jamel Dumas in violation of the Fourth Amendment?

Answer:    No _____    Yes  _____

If you have answered to "NO" Question 1, you have completed your deliberations.

Please sign the verdict sheet on the last page and notify the courtroom deputy you have completed your deliberations.  If you have answered "YES" to Question 1, please proceed to Question 2.

QUESTION 2:

Please answer "YES" or "NO" to the following questions regarding the facts surrounding the stop of the plaintiff and your finding that Patrolman Patrick McKinney used excessive force.

(a)     Did Patrolman McKinney believe that Mr. Dumas was attempting to choke or otherwise injure Robert Dumas?

Answer:     Yes_____     No_____

(b)     Did Patrolman McKinney order Mr. Dumas to let go of Robert Dumas?

Answer:     Yes_____     No_____

(c)     Did Patrolman McKinney attempt to pull Mr. Dumas away from Robert Dumas before he deployed his Taser at Mr. Dumas?

Answer:     Yes_____     No_____

(d)     Did Patrolman McKinney warn Mr. Dumas before he deployed his Taser at Mr. Dumas?

Answer:     Yes_____     No_____

(e)     Did Mr. Dumas ignore Patrolman McKinney's commands and warnings?

Answer:     Yes_____     No_____

Please proceed to Question 3.

QUESTION 3:

Please state what amount, if any, which will fairly compensate Mr. Dumas for any injury he actually sustained as a result of defendant Patrolman Patrick McKinney's conduct.

Answer: $_____     (Fill in dollar figure)

Please proceed to Question 4.

QUESTION 4:

(a) Did Patrolman Patrick McKinney act maliciously or wantonly in violating Mr. Dumas's rights?

Answer:     Yes  _____   No  _____

If your answer to Question 4(a) is "NO," you have completed your deliberations.  Please sign the verdict sheet on the last page and notify the courtroom deputy you have completed your deliberations.

If you answered "YES" to Question 4(a), please proceed to Question 4(b).

(b) Do you award punitive damages against Officer Patrick McKinney?

Answer:     Yes  _____   No  _____

If yes, in what amount?

Answer: $_____ (Fill in dollar figure)

After answering Question 4, you have completed your deliberations.  Please sign the verdict sheet on the last page and notify the courtroom deputy you have completed your deliberations.

SO SAY WE ALL, this _____ day of _____ 2011.


_____
Foreperson

## **CERTIFICATE OF SERVICE**

I, David J. MacMain, hereby certify that on this 28th day of February 2011, I caused the foregoing Defendant Patrick McKinney's Pretrial Memorandum to be served upon the following via the ECF system of the United States District Court for the Middle District of Pennsylvania:

> Matthew B. Weisberg, Esquire
> Weisberg Law, P.C.
> 7 South Morton Avenue
> Morton, PA  19070
> mweisberg@ppwlaw.com
> *Attorney for Plaintiff*

This *Certificate of Service* and the said filing are intended to be available for viewing and downloading from the ECF system of the United States District Court for the Middle District of Pennsylvania.

> /s/ David J. MacMain
> David J. MacMain